Barton Boyd ADAMS *v.* STATE of Arkansas

CA CR 88-24                                                    758 S.W.2d 709

Court of Appeals of Arkansas
Division II
Opinion delivered October 26, 1988

16

*Thaxton, Hout, Howard & Nicholson,* by: *E. Leon Nicholson,* for appellant.

*Steve Clark,* Att'y Gen., by: *J. Blake Hendrix,* Asst. Att'y Gen., for appellee.

MELVIN MAYFIELD, Judge. Appellant, Barton Boyd Adams, appeals (1) his conviction of possession of a controlled substance with intent to deliver for which he was sentenced to pay a fine of $3,000.00 and to serve four years in the Arkansas Department of Correction, and (2) his conviction of possession of drug parapher-

nalia for which he was fined $500.00.

There is evidence that Officer Joe Newsom of the Newport Police Department was on routine patrol about 6:30 p.m. on December 27, 1986, when he noticed a car, with no lights on, parked in a dark area near the high school. He also noticed that the vehicle was occupied but the motor was not running even though the weather was cold. Because of these facts and because there had been several burglaries in the area, Newsom pulled in behind the car and turned his spotlights on it. He approached the car on the driver's side, tapped on the window and asked to see the identification of the two occupants. When the window was rolled down, the officer smelled a strong odor of marijuana coming from inside the vehicle.

Newsom then radioed his headquarters for a license check on the car and warrant check on the occupants. While waiting for the results, he observed the male passenger, appellant herein, making unusual movements as if he were stuffing something down the front of his pants. Newsom then went to the passenger's side of the car, asked appellant to get out of the car and when he did, Newsom frisked him. A large plastic bag containing seven small plastic bags of what the officer recognized as marijuana, two roach clips, and some scales were found.

At a hearing on appellant's motion to suppress the evidence, in response to questions by defense counsel, Officer Newsom characterized his actions as a "lucky guess, policemen's intuition, just a hunch." Appellant points out that under A.R.Cr.P. Rule 3.1, a law enforcement officer in the performance of his duties may stop and detain a person whom he reasonably suspects "is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property." "Reasonable suspicion" is defined in A.R.Cr.P. Rule 2.1 as:

> [A] suspicion based on facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion; that is, a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion.

According to the commentary on A.R.Cr.P. Rule 2.1, a reasona-

ble suspicion is not the equivalent of probable cause but is "somewhat more than an intuitive guess or hunch." Appellant, therefore, emphasizes Officer Newsom's testimony that his investigation of appellant's car was only a hunch, policeman's intuition, or a lucky guess and concludes there was no reasonable suspicion for a stop. Appellant argues there was a violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution and that, under the exclusionary rule, the evidence seized should have been suppressed.

■ Appellant cites *Reeves* v. *State*, 20 Ark. App. 17, 722 S.W.2d 880 (1987), where we explained that the justification for an investigative stop depends upon whether, under the totality of the circumstances, the police have specific, particularized, articulable reasons to suspect that the person or vehicle may be involved in criminal activity. 20 Ark. App. at 22. *See also Hill* v. *State*, 275 Ark. 71, 628 S.W.2d 284 (1982), *cert. denied*, 459 U.S. 882 (1982). Appellant then cites *Van Patten* v. *State*, 16 Ark. App. 83, 697 S.W.2d 919 (1985), where we reversed a conviction of driving while intoxicated because the police officer who stopped appellant did not have specific, particularized, and articulable reasons to suspect that a crime had been committed.

While we find no fault with appellant's assessment of the law as stated in the cited cases, we do not agree that it mandates suppression of the evidence against him. In *Van Patten*, a Little Rock policeman received two radio calls, shortly after 11:30 p.m., in regard to a loud party disturbance at an apartment complex and a suspect who had driven off in a brown Jeep. The officer spotted a brown Jeep at an intersection near the apartments, stopped it, and discovered that the driver staggered and smelled strongly of alcohol. Although he registered 0.15% blood alcohol on the breathalyzer machine, his conviction for driving while intoxicated was reversed because a majority of this court thought that the officer making the stop did not have a "reasonable suspicion" the appellant had been involved in criminal activity. The court thought that A.R.Cr.P. Rule 3.1 had been violated because the radio dispatches gave very vague, general information about a loud party and a brown Jeep and the officer had not confirmed the complaint before stopping appellant.

We do not agree, however, that the present case must be

judged by Rule 3.1. Another Rule of Criminal Procedure, Rule 2.2(a), provides:

> A law enforcement officer may request any person to furnish information or otherwise cooperate in the investigation or prevention of crime. The officer may request the person to respond to questions, to appear at a police station, or to comply with any other reasonable request.

In *Baxter* v. *State*, 274 Ark. 539, 626 S.W.2d 935 (1982), a Little Rock police officer stopped appellant's car in a park, near a jewelry store that had just been robbed, to inquire if appellant had seen anyone else in the park. That stop led to the discovery of two suspects in the jewelry store robbery who were in appellant's car and to the recovery of the jewelry and two guns. The Arkansas Supreme Court examined the validity of the stop and found it reasonable under Rule 2.2(a). The court's opinion stated:

> The crucial issue in this case is whether the initial stop of appellant was valid under state and federal law. If the stop is found to be valid, the logical progression of events which followed resulted in probable cause for the arrest. The subsequent search of appellant's car after the arrest was a search incident to a lawful arrest and valid under the recent case of *New York* v. *Belton*, 450 U.S. 1028, 101 S.Ct. 2860 (1981).
>
> Cases regarding the police authority to make investigatory stops based upon reasonable suspicion that a vehicle or a person is involved in criminal activity are inapplicable to the stop at issue here. *See U.S.* v. *Cortez*, 449 U.S. 411 (1981) and *Terry* v. *Ohio*, 392 U.S. 1 (1968) . . . .
>
> Involved here is the question of the extent of permissible interruption a citizen must bear to accommodate a law enforcement officer who is investigating a crime. The practical necessities of law enforcement and the obvious fact that any person in society may approach any other person for purposes of requesting information make it clear the police have the authority to approach civilians.
>
> There is nothing in the Constitution which prevents the police from addressing questions to any individual. *See Terry* v. *Ohio, supra.* However, the approach of a citizen

> pursuant to a policeman's investigative law enforcement function must be reasonable under the existent circumstances and requires a weighing of the government's interest for the intrusion against the individual's right to privacy and personal freedom. To be considered are the manner and intensity of the interference, the gravity of the crime involved, and the circumstances attending the encounter. [Citation omitted.]
>
> Rule 2.2, Ark. Rules Crim. Proc., Ark. Stat. Ann., Vol. 4A (Repl. 1977) is a codification and an accommodation of these interests: . . . .

274 Ark. at 542-43.

The federal courts have reached the same conclusion reached in *Baxter*. In *United States* v. *Pajari*, 715 F.2d 1378 (8th Cir. 1983), D.E.A. officers had obtained a search warrant for appellant's house. After this, he was seen driving down the street and agents followed him as he pulled into a parking lot and stopped. The agents then approached the car to ask him to be at his house when the search took place. When appellant made a suspicious move, which agents interpreted as possibly reaching for a gun, they ordered him out of the car, and while conducting a pat-down search, they found cocaine. On appeal, he argued that the officers' initial approach to his car amounted to an unlawful seizure, supported by neither probable cause nor reasonable articulable suspicion that he was engaged in wrongdoing. The court stated:

> In this case, we conclude that there was no "seizure" or "stop" until Pajari was ordered to raise his hands and leave his car, which was prompted by Detective Fontana's reasonably based fear that Pajari was reaching for a weapon. Only at the point when Pajari was ordered to raise his hands and exit the car was there any demonstration of force or authority creating a reasonable apprehension on Pajari's part that his freedom of movement was restrained.

715 F.2d at 1381.

The District of Columbia Court of Appeals considered a case similar to the instant case in *Purce* v. *United States*, 482 A.2d 772 (D.C. 1984). On a routine patrol through a parking lot where

several cars had been broken into, an officer discovered appellant asleep in a car registered to a woman. The officer tapped on the window, woke the appellant and asked for identification. While appellant was searching his pockets and the glove compartment, the officer noticed a package of cigarette papers and a brown manila envelope of the sort commonly used to package marijuana lying on the console between the two front seats. The officer again asked for identification, and when none was presented, the officer asked appellant to get out of the car. As appellant stepped out, he reached back inside to get his shoes, and the officer observed what he thought was a gun. Appellant was then patted down and the floor mat of the car was lifted. This exposed a gun, and the appellant was arrested for firearms violations. He moved to suppress the evidence on the grounds that the officer's request for identification was a seizure and the officer had no articulable suspicion that appellant was involved in criminal conduct. The court held that "as a matter of law, a request for identification cannot constitute a show of authority sufficient to convert an innocent encounter into a seizure." 482 A.2d 775. *See also United States v. Poitier*, 818 F.2d 679 (8th Cir. 1987).

In a case factually similar to the one at bar, the Texas Court of Criminal Appeals, in *Merideth v. State*, 603 S.W.2d 872 (Tex. Crim. App. 1980), affirmed a conviction of misdemeanor possession of marijuana, rejecting appellant's argument that there was an unlawful search and seizure when the police detected the odor of marijuana after appellant opened the door of his pickup truck in response to their knock. The court said:

> Appellant contends that this was an "investigative stop" and that there was no information available to justify the intrusion . . . We disagree. This was not an investigative stop. The appellant was not "stopped" by the officer nor was the appellant detained in any manner by the officer until the marihuana was discovered. [Citations omitted.]

When the facts of the case at bar are carefully scrutinized, we think they will support a finding that, under the provisions of A.R.Cr.P. Rule 2.2(a), Officer Newsom was authorized to request identification information from appellant and the other occupant of the car parked near the high school as a part of his duty to investigate and prevent crime. We think this was done

without a "stop" as referred to in A.R.Cr.P. Rule 3.1. Then, when the car window was rolled down and Newsom smelled marijuana, he had a "reasonable suspicion" that the occupants of the car were committing, had committed or were about to commit a crime which authorized the officer to detain them for a reasonable period under A.R.Cr.P. Rule 3.1 in order to verify their identification or determine the lawfulness of their conduct. Then, when the officer saw the appellant stuffing something down the front of his pants, "there was a logical progression of events" which resulted in probable cause for arrest and the right to search for and seize the marijuana and drug paraphernalia introduced into evidence. *Baxter* v. *State* and *Purce* v. *United States, supra. See also United States* v. *Robinson*, 414 U.S. 218 (1973) (search incident to arrest on probable cause requires no other justification).

Affirmed.

COOPER and COULSON, JJ., agree.